NOT FOR PUBLICATION                                                         (Doc. No. 12)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL CZAJKOWSKI, | : |
| Plaintiff, | : Civil No. 14-3803 (RBK/AMD) |
| v. | : |
| | : **OPINION** |
| GARY PEAL et al., | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion of Defendants Gary Peal, Esq. ("Peal"), Robert Robinson, Esq. ("Robinson"), F. Steven Herb, Esq. ("Herb"), and Nelson Hesse, LLP ("Nelson Hesse") (collectively "Defendants") to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (Doc. No. 12.) The subject of this action is Plaintiff Michael Czajkowski's ("Plaintiff") claims for Breach of Contract, Legal Malpractice, Fraud, Tortious Interference with an Expectancy (Appointment as Executor), Tortious Interference with an Expectancy (Appointment as co-Executor), Breach of the Duty of Loyalty, Violation of Fla. Stat. § 817.535 (Filing Stanley Sr.'s Will), Violation of Fla. Stat. § 817.535 (Filing Notice of Trust), and Violation of Fla. Stat. § 817.535 (Filing of Second Deed) against Defendants. The claims relate to the Estate Plan Peal created for Plaintiff's father, Stanley Czajkowski, Sr. and Longine Czajkowski. For the reasons set forth below, Defendants' Motion to Transfer Venue will be granted. The Court will

transfer this case to the United States District Court, Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

I.   FACTUAL BACKGROUND

Stanley Czajkowski, Sr. ("Decedent") and Longine Czajkowski ("Longine") were married in 1997. (Amended Compl. ("Compl.") ¶ 10.) This was the second marriage for both Decedent and Longine. (Id.) Decedent had two sons from his prior marriage, Stanley Czajkowski, Jr. ("Stanley Jr.") and Plaintiff. (Id. ¶ 8.) Longine had two daughters from her prior marriage, Denise Kleiner ("Denise") and Christine Graham. (Id. ¶ 9.)

In December 2000, Decedent and Longine retained Peal, a Florida attorney at the firm Nelson Hesse, to draft certain documents for their estate plans. (Id. ¶ 11.) These documents included "mirror Wills," a Trust, and an Agreement Not to Unilaterally Change the Will or Trust (together "the Estate Plan"). (Id.) Decedent named his biological sons, Stanley Jr. and Plaintiff, as the Executors of his Will. (Id. ¶ 15.) These documents were signed on April 2, 2001. (Id. ¶ 11.) Plaintiff claims that these documents "were clearly intended to ensure that the legal intentions of the decedent were clearly stated and safeguarded from interference or unilateral revision or manipulation not only prior but also after the death of the decedent." (Id.)

At some time after April 2, 2001, Decedent's health began to fail. (Id. ¶ 13.) As Decedent's health declined, Peal allegedly represented Longine and her daughter Denise and provided them with legal advice and documents that "violated his professional duties to [Decedent]." (Id.) In 2006 and 2007, Peal also allegedly met with Denise and Longine to create documents to declare Decedent incompetent. (Id. ¶ 14.) He then

allegedly billed Decedent and Longine for these documents, although Decedent never agreed to this representation.  (Id.)  Plaintiff alleges Peal violated client confidentiality by including Denise in this process; and violated his duties to Decedent by taking legal interests opposed to the interests of Decedent.  (Id.)

Decedent died on February 10, 2008 in Cherry Hill, New Jersey.  (Id. ¶ 15.)  At the time of Decedent's death, neither Stanley Jr. nor Plaintiff (together "Executors") had a copy of Decedent's Will.  (Id.)  Plaintiff alleges that Defendants wrongfully attempted to conceal Decedent's Will by filing the original Will with the Clerk of Lee County, Florida.  (Id. ¶ 19.)  He also claims that this filing was a deliberate act to place the Will beyond the jurisdiction of the domiciliary state and the control of the Executors, to complicate and prevent proper probate of Decedent's Estate, and to allow Peal enough time to serve Longine and her daughter's wishes with no regard for the duties owed to Decedent.  (Id.)  Thus, Plaintiff says, the Executors had to file a suit in the Superior Court of New Jersey to compel production of Decedent's Will.  (Id. ¶ 18.)

In addition to concealing Decedent's Will in violation of his attorney-client duties, Plaintiff alleges Peal took additional actions in direct violation of the Agreement not to Unilaterally Change the Will of Trust.  (Id. ¶ 17.)  These actions included the creation of: (1) a First Amendment to the Stanley Sr. and Longine Czajkowski Revocable Living Trust on April 30, 2008 ("the First Amendment"), which removed Stanley Jr. and Plaintiff as successor trustees, (id. ¶ 17.a); (2) a Deed in Trust ("the First Deed"), which transferred Florida real estate that was jointly owned by Decedent and Longine to Longine's control as Trustee of the Trust on April 30, 2008, (id. ¶ 17.b; and (3) a

Trustee's Deed ("the Second Deed") removing the same real estate from the Trust and into Longine's name individually on June 19, 2008. (Id. ¶ 20.)

On June 19, 2008, Peal mailed a copy of Decedent's Will to the Executors. (Id. ¶ 21.) Plaintiff claims that this transmission was incomplete, however, because Peal did not include the Agreement Not to Unilaterally Change the Will or Trust, the First or Second Deeds, or the First Amendment. (Id.) In fact, Plaintiff asserts he did not receive these documents until October 2009. (Id.)

Next, Plaintiff alleges Peal prepared additional documents after Decedent's death, including: (1) a Durable Power of Attorney for Longine adding her son-in-law, Lawrence Graham ("Lawrence"), as her Attorney in Fact, (id. ¶ 22.a); (2) a First Codicil to the Will of Longine ("The Codicil"), which added Lawrence to the list of Executors of her Estate in violation of the Agreement Not to Unilaterally Change the Will or Trust, (id. ¶ 22.b); and (3) a Second Amendment to the Trust, which added Lawrence as a Trustee, violating the Agreement Not to Unilaterally Change the Will. (Id. ¶ 22.c.) Plaintiff further avers that on September 30, 2009, Peal prepared a Third Amendment to the Trust in an attempt to correct his "wrong doing" and "self-dealing," but the Third Amendment was never signed. (Id. ¶ 24.)

Decedent's Will was finally admitted to probate on September 6, 2013. (Id. ¶ 27.) Plaintiff filed the instant action on June 13, 2014, (Doc. No. 1), alleging eighteen counts in total, and amended his Complaint on July 21, 2014. (Doc. No. 6.) In his Amended Complaint, Plaintiff alleges nine counts against Peal, including: Breach of Contract (Count I); Legal Malpractice (Count III); Fraud (Count V); Tortious Interference with an Expectancy (Appointment as Executor) (Count VII); Tortious Interference with an

Expectancy (Appointment as co-Executor) (Count IX); Breach of the Duty of Loyalty (Count XI); Violation of Fla. Stat. § 817.535 (Filing Stanley Sr.'s Will) (Count XIII); Violation of Fla. Stat. § 817.535 (Filing notice of Trust) (Count XV); and Violation of Fla. Stat. § 817.535 (Filing of Second Deed) (Count XVII).  Plaintiff also brings nine counts against Defendants Robinson, Herb, and Nelson Hesse, including: Breach of Contract (Count II); Legal Malpractice (Count IV); Fraud (Count VI); Tortious Interference with an Expectancy (Appointment as Executor) (Count VIII); Tortious Interference with an Expectancy (Appointment as co-Executor) (Count X); Breach of the Duty of Loyalty (Count XII); Violation of Fla. Stat. § 817.535 (Filing Stanley Sr.'s Will) (Count XIV); Violation of Fla. Stat. § 817.535 (Filing notice of Trust) (Count XVI); and Violation of Fla. Stat. § 817.535 (Filing of Second Deed) (Count XVIII).

Defendants filed the instant Motion to Transfer Venue pursuant to § 1404(a) on September 26, 2014.  (Doc. No. 12.)  Because the parties have fully briefed the issues, the Court will proceed to a discussion of the merits of this Motion.

## II.     LEGAL STANDARD

The decision whether to transfer an action pursuant to § 1404(a) rests in the Court's discretion and is reviewed for abuse of discretion.  Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 326 (D.N.J. 1995) (citing Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 631—32 (3d Cir. 1989).  The party seeking transfer of venue bears the burden of establishing that transfer is warranted and must submit "adequate data of record" to facilitate the Court's analysis.  Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 480 (D.N.J. 1993).  Before transferring venue, the Court must

articulate specific reasons for its decision. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 44 (3d Cir. 1989); Ricoh, 817 F. Supp. at 480.

### III. DISCUSSION

#### A. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

Moving Defendants' motion to transfer venue is brought pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a). On a motion to transfer venue under § 1404(a), Courts are not limited to consideration of the three factors enumerated in the statute. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Rather, Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara, 55 F.3d at 883 (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30–31 (1988)).

#### B. Factors Guiding Court's Discretion

Courts ruling on § 1404(a) motions must take into account a wide range of public and private interests in determining whether a transfer is appropriate.

The Third Circuit has identified the following private factors as being significant to the § 1404(a) analysis:

> Plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly

6

> limited to the extent that the files could not be produced in the alternative forum).

Yocham v. Novartis Pharma. Corp., 565 F. Supp. 2d 554, 557 (D.N.J. 2008) (quoting Jumara, 55 F.3d at 879).

The public interest factors to be considered are:

> The enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two for a resulting from court congestions; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Yocham, 565 F. Supp. 2d at 557 (quoting Jumara, 55 F.3d at 879–80).

However, "the burden of establishing the need for transfer still rests with the movant," and "the plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879. "[U]nless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." Shutte v. Amco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal citations omitted).

### C. Defendants' Motion

As an initial matter, the Plaintiff does not dispute that the action "might have been brought" in the United States District Court for Middle District of Florida. Because Plaintiff does not dispute this proposition and because almost all of the events underlying the cause of action occurred in Fort Myers, Florida, this Court finds that venue would be proper in the Middle District of Florida. See CPS MedManagement, LLC v. Bergen Reg'l Med. Ctr., L.P., 940 F. Supp. 2d 141, 149 (D.N.J. 2013) (finding venue is proper under 28 U.S.C. § 1391(b) where a substantial part of the events and omissions underlying the plaintiff's claims occurred in New Jersey).

7

Defendants must still demonstrate that the Middle District of Florida is the more convenient forum. Yocham, 565 F. Supp. 2d at 557. Defendant argues that this case should be transferred to the District Court for the Middle District of Florida because the underlying events giving rise to the cause of action occurred in Florida, all of the Defendants are domiciled in Florida, Plaintiff's complaint alleges violations of Florida Statutes, and any expert witnesses will necessarily have to be attorneys whom are barred to practice law and actually practice law in Florida. (Defs.' Br. at 10–12.) The Court, in its broad discretion under § 1404, finds that transfer is appropriate in this case. The Defendants have met their burden of showing that the private and public factors favor transfer to the Middle District of Florida.

### a. Private Factors

#### i. Parties' Choice of Venue

Plaintiff has chosen to file this action in the District of New Jersey because both he and the Estate he represents are located in its jurisdiction. (Pl.'s Opp'n at 7.) As the movants, Defendants have made clear that their choice of forum is in the Middle District of Florida. (Defs.' Br. at 10.)

The Court notes that "a plaintiff's choice of a proper forum … should not be lightly disturbed." Shutte, 431 F.2d at 25. However, a plaintiff's choice is entitled less deference "when the central facts of a lawsuit occur outside of the chosen forum." Nat'l Prop. Investors VIII, 917 F. Supp. at 327. Accordingly, the Court will consider the location of events giving rise to the action.

#### ii. Location of Events Giving Rise to the Action

The location of the underlying events giving rise to the action occurred in the Middle District of Florida.  In December 2000, Decedent and Longine retained Florida attorney, Peal and his Florida firm, Nelson Hesse, to draft their Estate Plan.  (Declaration of Matthew Toto, Esq. ("Toto Decl."), Ex. A at ¶¶ 4–7, 11.)  The Agreement not to Unilaterally Change the Will or Trust was drafted, executed, and notarized in the State of Florida on April 2, 2001.  (Id., Ex. B.)  The Joint Revocable Living Trust Agreement was drafted, executed, witnessed, and notarized in the State of Florida on April 2, 2001.  (Toto. Decl., Ex. C.)  Decedent's Will was drafted, executed, witnessed, and notarized in the State of Florida on April 21, 2001.  (Id., Ex. D.)  Longine's Will was also drafted, executed, witnessed, and notarized in the State of Florida on April 21, 2001.  (Id., Ex. E.)  Furthermore, the Trust Agreement, Decedent's Will, and Longine's Will all provide that they "shall be construed under the laws of the State of Florida." (See Id., Exs. C ¶ 8.10, D ¶ 5.3, E ¶ 5.3.)

Defendants forwarded bills for services rendered for the Estate Plan to Decedent and Longine at their address, 271 Peppard Drive, Ft. Myers Beach, Florida 33931.  (Id., Ex. F.)  Decedent and Longine paid for Defendants services from a Bank of America checking account indicating Decedent and Longine's Florida address.  (Id., Ex. G.)  After Decedent's death, Peal filed Decedent's Will with the Clerk of Lee County, Florida.  (Id., Ex. R.)

In addition to the Estate Plan being drafted, executed, witnessed, and notarized in the State of Florida, the only real estate that Plaintiff alleges was transferred in violation of the Agreement not to Unilaterally Change the Will or Trust is located in Fort Myers Beach, Florida.  (Id., Exs. K, O.)  Counts XIII, XIV, XV, XVI, XVII, and XVIII of

Plaintiff's eighteen count Amended Complaint allege violations of Florida Statute § 817.535. (See id., Exs, A, S.)

Plaintiff argues that it is irrelevant that the documents at issue were created in Florida because Decedent was domiciled in New Jersey at the time of his death. (Pl.'s Opp'n at 13.) However, Plaintiff cites no case law for this proposition. Nor has Plaintiff provided any exhibit, affidavit, certification, or other documentation that confirms Decedent was domiciled in New Jersey at the time of his death. Moreover, it is unclear why Decedent's domicile at the time of his death would be relevant, but the fact that Defendants' alleged malpractice occurred in Florida would be irrelevant, as Plaintiff argues. The Court instead concludes that the location of events giving rise to the action weighs strongly in favor of transfer.

### iii. Convenience of the Parties and Witnesses

#### 1. Physical Convenience

An overwhelming majority of the parties and potential witnesses to this action are domiciled in the State of Florida. First, all of the Defendants are domiciled in Florida. (Defs.' Br. at 10; Toto Decl., Ex. A ¶¶ 4–7.) Decedent's son and the original Executor of Decedent's Estate, Stanley Jr., is domiciled in the State of Florida. (Defs.' Br. at 11; Toto Decl., Exs. D ¶ 5.1, T.) Denise, Longine's daughter and witness, is domiciled in the State of Florida. (Defs.' Br. at 11.)

It is unclear where Longine is domiciled. The Agreement not to Unilaterally Change the Will or Trust, the Joint Revocable Trust, the bill for Defendants' services, the check signed by Longine for Defendants' services, Longine's Driver's License, the First Deed in Trust, the First Amendment to the Trust, the Notice of Trust, the Trustee's Deed,

the Second Amendment to the Trust, and the Third Amendment to the Trust all list Longine's Florida address. (See Toto Decl. at Exs. B, C, F, G, H, K, L, N, O, P, Q.) Plaintiff asserts that Longine is now domiciled in Cherry Hill, New Jersey with her daughter Christine and son-in-law Lawrence, but has provided no exhibit, affidavit, certification, or any other documentation to support this assertion. (See Pl.'s Opp'n at 11.)

      Plaintiff is domiciled in New Jersey. As such, Plaintiff argues that he filed this action in New Jersey so he would not have to engage in extensive travel. (Id. at 8.) However, Plaintiff admits that he and his counsel have agreed to travel to Florida for any and all depositions of Defendants that need to be taken. (Id. at 12.) Plaintiff offers no explanation of why traveling to Florida for trial would be more burdensome than traveling to Florida for depositions.[1]

---

[1] In addition to being domiciled in New Jersey, Plaintiff asserts that his choice of forum must prevail over all of the other private factors because there is "companion, essential relief being sought in the Superior Court of New Jersey, Camden County Vicinage, Chancery Division, Probate Part." (Pl.'s Opp'n at 7.) Relying on United Air Lines, Inc. v. United States, Plaintiff argues that the existence of a related litigation precludes transfer. 192 F. Supp. 795, 796 (D. Del. 1959).

As an initial matter, the decision in United Air Lines does not bind this Court, and even if it did, United Air Lines is readily distinguishable from this case. In United Air Lines, the Plaintiff, a Delaware corporation, initiated an action in the District of Delaware to recover damages resulting from a collision in the vicinity of Las Vegas, Nevada, between a regularly scheduled United airliner and a jet aircraft operated by the United States Air Force. Id. at 795. The defendant moved to transfer venue to Nevada. Id. However, the only evidence for transfer the defendant set forth was a list of 120 potential witnesses, none of whom lived in Delaware. Id. at 796. There were no survivors to the plane collision and the defendants did not set forth the materiality of the proposed witnesses' testimony. Id. Further, there were twenty-three other actions pending in District Courts across the country arising from the same crash. Id. Without more evidence from the defendant and without reasonable assurance that the other suits were in the process of transfer to Nevada, the court found that it would be unfair to deprive United Air Lines of its selected forum. Id.

The Court in United Air Lines was clear that related pending litigation does not always preclude transfer. See id. Further, Defendants in this case have set forth ample evidence that the Middle District of Florida is a more appropriate venue. The Court finds that the related pending litigation in New Jersey Superior Court does not necessarily preclude transfer of the instant matter to the Middle District of Florida. Moreover, as discussed infra in Part III.C.b., it appears that the issues in the New Jersey probate proceedings are

11

There is also the issue of expert witnesses. A claim for legal malpractice will necessarily require expert testimony in order to establish the standard of care and for a trier of fact to determine whether the Defendants breached the standard of care. Because the Estate Plan was drafted, executed, and notarized in the State of Florida and because Plaintiff alleges three violations of a Florida Statute, any expert witnesses will need to have the requisite knowledge, experience, and skill with regard to actually practicing in Florida. Plaintiff asserts that there are licensed Florida attorneys living in Southern New Jersey and Philadelphia, (id. at 15), but he cites no exhibit, affidavit, certification, or any other documentation to support this contention. While Plaintiff's assertion is likely correct, and while the Court has every belief that Florida licensed attorneys living in Southern New Jersey or in Philadelphia could have the requisite knowledge, experience, and skill of practicing law in Florida, the Court does find that it would be more difficult to find an expert witness in New Jersey than in Florida.

Based on the foregoing reasons, the Court finds that the physical convenience of the parties and witnesses weighs more strongly in favor of transfer to the Middle District of Florida.

### 2. Financial Convenience

Plaintiff argues that his choice of forum must prevail because his financial interest outweighs the Defendants' financial interest. (Id. at 9.) He asserts that traveling to

---

unrelated to the legal issues in this case, and the interests of judicial economy would not be served by keeping the present action in the District of New Jersey.

Florida would cause him "undue economic hardship" and that the Defendants are well insured and are not covering any additional out-of-pocket costs. (Id.) While this may be true, Plaintiff has not provided the Court with any exhibit, affidavit, certification, or any other documentation to support this assertion. Further, it seems unlikely that the Plaintiff would have personal knowledge of who is paying the costs of Defendants' legal services and/or travel expenses. Additionally, Plaintiff's willingness to travel to Florida for depositions cuts against this contention of "undue economic hardship."

Because there is no supporting documentation in support of either side's position, the Court finds that the financial convenience of the parties does not weigh heavily in favor of either party.

### iv. Location of Books and Records

The location of the books and records does not weigh in favor of either party because neither party asserts any ease or hardship in either fora regarding the appropriate books and records.

For all of the aforementioned reasons, including that a substantial amount of the underlying events giving rise to the cause of action occurred in Florida, all of the Defendants are domiciled in Florida, other key witnesses are domiciled in Florida, Plaintiff's complaint alleges violations of Florida Statutes, and any expert witnesses will necessarily have to be attorneys whom are licensed to practice law in Florida, the Court finds that the private interests weigh strongly in favor of transferring venue to the Middle District of Florida.

### b. Public Factors

### i. Enforceability of the Judgment

The parties do not dispute that a judgment in this case would be equally enforceable in Florida and New Jersey. Thus, this factor does not weigh more heavily for either party.

### ii. The Local Interest in Deciding Local Controversies At Home

Which of the two potential districts maintains a greater interest in the action is significant to a decision to transfer venue. Nat'l Prop. Investors VIII, 917 F. Supp. at 330. "The burden of jury duty should not be placed on citizens with a remote connection to the lawsuit." Id. Typically, when a substantial amount of the alleged culpable conduct occurred in one forum, that court favors retaining jurisdiction as a matter of local interest. Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V., Civ. No. 07-273, 2007 WL 4365328, at *6 (D.N.J. Dec. 11, 2007).

As explained supra, Defendants have shown that the underlying events that give rise to Plaintiff's claims occurred in Florida. The real estate involved in the instant matter is located in Florida. (Toto Decl., Exs. K, O.) Defendants are Florida attorneys and a Florida law firm that allegedly violated a Florida Statute and the professional duties that apply to them as members of the Florida Bar. (Counts III–XVIII.) Florida clearly has an interest in deciding whether its own statutes were violated and whether its licensed attorneys violated its standards of professional conduct.

Plaintiff asserts that New Jersey has a significant interest in protecting its citizens that does not cease at the moment of death, but rather continues through the probate process. (Pl.'s Opp'n at 13.) Plaintiff cites no case law for this proposition. Further, Plaintiff alleges that the Camden County Superior Court, Chancery Division has ruled that Decedent was domiciled in New Jersey and is applying New Jersey law to the

14

administration of the estate. (Id.) While this may be true, it does not follow that New Jersey law governs alleged violations in this action, including Florida Statutes and violations of professional duties owed by Florida attorneys.

The Court finds this factor weighs more heavily in favor of Defendants and transfer to the Middle District of Florida.

### iii. Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

As noted supra, Plaintiff has a "companion" case pending in in the Superior Court of New Jersey, Camden County Vicinage, Chancery Division, Probate Part. (Pl.'s Opp'n at 7.) However, to the best of the Court's knowledge, that claim does not involve any of the same Defendants as the one currently pending in Federal Court. Further, and as noted by Plaintiff, there is no federal jurisdiction over that claim, so the claims could not be consolidated. (Id.) Thus, the pending State Court claim does not make the federal claim easier, more expeditious, or less expensive if kept in the District of New Jersey as opposed to the Middle District of Florida.

### iv. The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion

There is no identifiable administrative difficulty resulting from court congestion in either the District of New Jersey or the Middle District of Florida that weigh in favor of either party.

### v. The Public Policies of the Fora

Neither party asserts any specific public policy implications that a transfer of venue would create in either forum. As such, this factor does not weigh in favor of either party.

15

### vi. The Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases

Finally, "justice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." Am. Senso RX, Inc. v. Banner Pharmacaps, Inc., Civ. No. 06-1929, 2006 WL 2583450, at *6 (D.N.J. Sept. 6, 2006). Here, the Trust Agreement, Decedent's Will, and Longine's Will all provide that they "shall be construed under the laws of the State of Florida." (See Toto Decl., Exs. C ¶ 8.10, D ¶ 5.3, E ¶ 5.3.) Defendants allegedly violated three provisions of a Florida Statute. (Counts XIII–XVIII.) Finally, Defendants allegedly violated the professional duties that apply to them as members of the Florida Bar. The Court finds that the District Court for the Middle District of Florida would be more familiar with the applicable Florida law in this case than a district court in the District of New Jersey.

In light of the applicable public factors, the Court finds these factors weigh more heavily in favor of transfer. Thus, taking the private interest factors and the public interest factors together, the Court further finds that transferring venue to the Middle District of Florida is appropriate under § 1404(a).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Venue pursuant to § 1404(a), will be **GRANTED**. This matter will be transferred to the United States District Court, Middle District of Florida pursuant to 28 U.S.C. § 1404(a). An accompanying Order shall issue.

Dated:   4/24/2015                                      s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge